### COMPENSATION TO DE JURE OFFICERS.

Common Pleas Court of Cuyahoga County.

JOHN LUTTNER v. THE CITY OF CLEVELAND.

Decided, March 19, 1914.

*Municipal Corporations—Policemen Wrongfully Dismissed from Force Sue for Recovery of Their Salaries—Payment to a De Facto Officer Bars a De Jury Officer from Recovery—Earnings by De Jure Officer from Other Sources—Estoppel—Res Judicata.*

1. A decision in a given case is not *res judicata* in another similar case and does not estop other persons who are similarly situated from presecuting their separate and distinct legal rights.
2. Where a *de jure* officer has been paid the salary attaching to such office, the *de jure* officer can not enforce payment to him of the amount falling due while he was excluded from the office.
3. The general current of authority is to the effect that a *de facto* officer can not maintain an action for recovery of salary, but where the salary has been paid to the *de facto* officer the *de jure* officer may maintain an action for its recovery from him.

*M. B. Excell, F. F. Gentsch* and *Charles Savage,* for plaintiff.
*John N. Stockwell,* contra.

VICKERY, J.

This case was heard upon an agreed statement of facts, which in effect show that Luttner was, prior to the 25th day of April, 1911, a policeman in the city of Cleveland, and on the day last above mentioned was suspended by the chief of police of Cleveland; and that thereafter, on the 5th day of May, the director

of public safety adjudged the plaintiff guilty as charged in the charge preferred against him, and dismissed him from the police force; and thereupon the plaintiff appealed to the civil service commission of the city, and on the 16th day of-May, 1911, the civil service commission found the plaintiff guilty of the charges against him and affirmed the judgment of the director of public safety, dismissing plaintiff from his position on the police force. And thereafter, on the 22d day of June, plaintiff filed his petition in the court of common pleas, asking for a writ of mandamus to compel the city of Cleveland and the director of public service to restore the plaintiff to his position on the police free; and that on the 16th day of December, 1912, the court of common pleas refused to issue the writ and dismissed the · petition of plaintiff; and that thereafter on the —— day of June, 1913, the court of appeals, after hearing duly had, issued the writ of mandamus against the city and the director of public safety, reinstating the plaintiff to his position upon the police force; that on the 22d day of July, 1913, the plaintiff was duly reinstated to his position upon said force by the city authorities.

At the same time that this plaintiff was suspended, one Henry Lang, likewise a patrolman, was suspended, and also one Arthur· Cottrell, and Peter J. Esper, and Fred W. Yoes; and the same proceedings in every particular were had in the cases of these respective men as were had in the case of the plaintiff Luttner; and the five cases have all been heard together, and the decision in one will be a decision in all of the cases.

It seems that prior to the 25th day of April, 1911, some friction had existed in the police department with respect to certain members of the police force belonging to a club called the Forum Club; and that each of the parties, in the respective cases to which I have called attention, were members of this club; and they, together with one other patrolman, who was removed at the same time and under the same conditions, to-wit, Charles Savage, undertook to do certain things for which the chief of police sought to discipline them; and the men whose names I have mentioned, together with said Charles Savage, were removed from office in the manner that I have outlined; and about the time, perhaps at the same time that these cases were filed, Charles

Savage likewise filed a suit in the court of common pleas asking for a writ of mandamus to compel the director of public safety and the city of Cleveland to reinstate him in his position, which writ was refused by the court of common pleas, and an appeal was taken to the then circuit court, the predecessor of the court of appeals, and a later decision was rendered by the circuit court; or perhaps it was taken on error to the common pleas court and was affirmed by the circuit court; at any rate it closed the litigation in that case, as the case was not carried to the Supreme Court. Subsequently, after the circuit court had gone out of existence and was succeeded by the court of appeals, and the personnel of said court having been changed, these cases under discussion were taken for review to the court of appeals. The court of common pleas naturally in these cases followed its own ruling in the Savage case, which ruling was affirmed by the circuit court; but the court of appeals reversed the holding of the circuit court, or, rather, it may be more proper to say that they refused to be bound by the ruling of the circuit court, and reversed the common pleas court and directed that these men be reinstated as set up in the journal entry attached to plaintiff's petition filed herein.

When the civil service commission had affirmed the findings of the director of public safety, and vacancies were found to exist in the offices held by the plaintiff and his fellows, that fact was certified to the civil service commission, and on the 8th day of June each of the vacancies was filled by an appointment, the plaintiff's successor being George A. Ress, who qualified on the 8th day of June, 1911, and held the office and drew the salary of such office from the 8th day of June down to and including the 22d day of July, 1913, at which time the plaintiff was reinstated in the said office. The plaintiff thereupon brought this action to recover the salary he would have earned from the time of his suspension down to the 22d day of July, 1913; and it is agreed between the parties that $2,655.50 would be the sum thus coming to him, if he is entitled to recover for the period of his wrongful exclusion from his office. There being no dispute as to the facts in the case, it becomes merely a question of law as to his right to recover.

Plaintiff's action is for money only, and it sets up a claim for money. It alleges, among other things, that the court of appeals, in its findings, had decided the question that the plaintiff, Luttner, was entitled to the full sum of money that he would have earned had he been permitted to remain in his office. It is argued with some vehemence that this court is precluded from considering that question, but I am compelled to take a different view. Whatever the court of appeals may have said in this respect, it could be no more than *dicta,* because the question was not before the court, it was not argued, as I understand, before that court, nor could it very well be argued, because the case was simply a suit in mandamus to compel the city and the director of public safety to reinstate the man and restore him to all rights that he may have lost by reason of his wrongful expulsion. Of course, if it had been conceded that the amount was liquidated and there was no question as to the amount that should come to the plaintiff, or if the city auditor had issued a warrant and then the proper disbursing officer had refused to honor the warrant, mandamus might have been a proper remedy. That was not the situation, and of course whatever may have been the views of the court of appeals upon this question, they would not be binding in this case because that question was not before it.

Now, in answer to the claims made by the plaintiff, it is claimed by the city, first, in the case in which the rights of Savage were determined —the circuit court having determined that Savage, who was removed under exactly similar circumstances and for the same reason, was rightfully removed—that they then had the right to rely upon such decision, and that therefore the decision in that case was a complete defense; I can not take that view of the first defense. I do not think that the decision in one case could in any way be *res judicata* in another case, or that it would estop other persons who were similarly situated from prosecuting their separate and distinct legal rights that they might have, however authoritative that decision might be in controlling the actions of the city authorities. So I hold that the first defense is no defense in law.

The defendant, the city, sets up as a second defense, that after the board of civil service commissioners had sustained the director of public safety, and the plaintiff was removed from office, a vacancy was created, and on the 8th day of June, Ress was appointed to fill that vacancy, and filled it, as I have already said, up to and including the 22d day of July, 1913; and that he was a *de facto* officer, and the city having paid such officer, the *de jure* officer could not again draw his pay from the city. This raises a very serious defense to this action, and the one to which I will devote most of my time.

The city also sets up a third defense, that during the time of the plaintiff's expulsion from office he earned money on the outside. I believe the answer to interrogatories shows that the plaintiff drew $525 in outside employment; and the city in its third defense says, that if the court should find that the plaintiff was entitled to recover for the time that he was ousted from office, then there should be a deduction from the amount thus coming to him equal to the amount earned by him, and he should only be permitted to recover for the difference.

Upon this question authorities are quite divided, and I shall discuss this defense only incidentally as it might bear upon the equities of the parties if the second defense is found to be a good defense.

Referring now to the second defense: It is contended that this is still an open question in the state of Ohio; that the decisions upon this question in this state do not quite decide the question at bar, outside of the decision of our court of appeals in this very case and one of the courts down the state who followed that decision; and, as I have said, in my judgment the court of appeals did not have that question before it.

The case of *Carter* v. *City of Columbus*, which was decided by Judge Evans of the Franklin County Common Pleas Court, falls a lot short of the proposition here. Judge Evans held in the Carter case, that Carter, who was chief of police and had been wrongfully removed and afterwards reinstated, was entitled to draw about a month's salary, that being the time occupied by the man who had been appointed by the mayor to super-

cede him, because the *de facto* officer had not drawn it; and be- fore I get through I will seek to show that that makes quite a difference with respect to what ought to be holding in cases of this character.

There is one thing that strikes a candid mind on starting out to investigate this question. Some very respectable courts are diametrically opposed to each other, but there seems to be a general unanimity amongst the courts that have passed upon this question, that where a *de facto* officer has not drawn the salary attached to the office, the *de jure* officer would be entitled to that pay. Indeed, quite a number authorities hold, perhaps most of them, that the *de jure* officer would have a right of action against the *de facto* officer if he had drawn the pay. So the question be- comes a very important question, as to whether the *de facto* officer had actually drawn the compensation attached to the office. One of the earliest and strongest cases upon this kind of a case is the one decided in the state of Michigan in the 20 Mich. Rep., being *Auditor* v. *Benoit*. In that case Benoit and Miller were candidates for the office of treasurer of Wayne county in the general election of November, 1866. Miller was declared elected by the board of county canvassers, and was inducted into office in January, 1867, and continued in the performance of his duties as such officer until November, when he was ousted by judgment of the court upon an information filed against him by Benoit, who thereafter was inducted into said office and continued to hold the same until January 1, 1869. At the close of his term Benoit claimed a salary for the entire term; but the board of county auditors, upon Miller's settlement, allowed him to de- duct from the amount to be turned over to his successor a sum equivalent to his salary for the time he performed the duties of treasurer of the county, and therefore refused to permit Benoit salary for the entire term; and when he settled he sought to re- tain this amount for himself, and a suit was brought by the county against Benoit and his bond to recover the sum of money thus retained by him; and so the question was as to whether, the salary having been drawn by a *de facto* officer, the *de jure* officer could afterwards recover the same amount again from the

county. Judge Campbell, in a very well considered opinion, held that he could not. The only reason why I revert to this case is because it is argued very strongly that Judge Cooley rendered a dissenting opinion in the case, and that dissenting opinion is referred to a great many times in the books. I think that, on a close study of Judge Cooley's opinion, one can not help coming to the conclusion that Judge Cooley regarded that the county auditors, in permitting Miller to retain the salary out of his settlement, had voluntarily paid the *de facto* officer after it had been determined by a court that he was not entitled to hold the office. At least that is his argument. Indeed Judge Christiancy, in a brief opinion, stated that if it had been clearly proven that such was the fact, then he would have agreed with Judge Cooley; that in that event Benoit would have been entitled to the payment, even though Miller had drawn the salary attached to the office; but, not being absolutely clear that that was the case, he would have to agree with the majority of the court. Of course Michigan, very many years later, affirmed this doctrine by a unanimous court; and it is now conceded by counsel for the plaintiff in this case that Michigan is clearly against it; and I only dwell thus long on the Benoit case because of the argument with respect to Judge Cooley's dissenting opinion.

It is argued that the salary is attached to the office, and that whoever is entitled to the office is entitled to the salary which is attached to the office. Now, let us see, what is a public office? and who is a public officer?

Mechem on Public Offices and Officers says:

"A public office is the right, authority and duty, created and conferred by law, by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer."

It differs, as I will show and as the authorities all hold, from employment under a contract.

Now, what is a "portion of the sovereign power" given to an individual or an officer for? Why, clearly for the benefit of the

public. I know it is sometimes claimed that a public office is a private snap, but I think the authorities hold that a public office is a public trust, and the man holding such office should hold it for the benefit of the public. Offices are supposed not to be created except with the object and necessity for them; and if there be a necessity, it is important that the duties of such office be performed; that when a vacancy occurs, either by removal or otherwise, the public will suffer unless the duties of that office are performed; and the duties of an office could hardly be performed unless the emoluments of the office went to the person who performed them. There is a great line of authorities from almost all the states which hold that where the duties of an office have been performed by one appointed or elected and inducted into office, even though it should afterwards be held that his occupation of such office was illegal, still he was a *de facto* officer, and his acts were legal and would bind the public which he represented; and that if his acts were legal, he was in fact an officer or a *de facto* officer, and the disbursing officer, he who will be charged with the duty of paying the salary, will be perfectly safe in paying the salary attached to that office to the incumbent who is performing the duties of the office, and that he will be protected in thus paying. He would not be liable upon his bond for paying out money wrongfully; and there is a long line of authorities to the effect that the public which he represented would not be obliged to pay to the *de jure* officer when it had been determined that he had been wrongfully removed from office. Indeed, it seems to me that the very interest of the public demands that this should be the rule. There are well-considered cases upon this question in Nebraska, Kentucky, New York, New Jersey, Connecticut, Michigan, Iowa, South Dakota, Kansas and Illinois, where, in *Bullis* v. *Chicago,* 235 Ill., 472, the court holds thus:

"Salary is incident to the title to the office, not to its occupation. And if one having a legal right to an office is wrongfully prevented by the city from performing the duties of the office, he may recover his salary for the period he was so prevented, *where it has not been paid to any other one performing the duties of the office,* and his earnings or opportunities to earn can not be shown by the city in reduction of damages."

This I believe is a case relied upon by the plaintiff, but it will be noticed that I have underscored the words, "where it has not been paid to any other one performing the duties of the office." The inference from this language would be, that where it had been paid to another he would not be entitled to it, which would be directly in line with *Carter* v. *City of Columbus,* decided by Judge Evans of the Franklin County Court of Common Pleas.

This case in Illinois sustains the plaintiff's contention with respect to the third defense the defendant has set up. We find the same doctrine held in Colorado, and in 16 L. R. A. (N. S.), 794, which collates and reviews practically all the authorities upon this subject. I notice among the authorities quoted in the note to the L. R. A. case that *Steubenville* v. *Culp,* 38 O. S., 18, is given as one of the authorities. Nebraska holds likewise, also Arizona, Idaho, Louisiana, and other authorities.

Dillon, in his work on Municipal Corporations, Vol 1, Section 429, says:

"It is a general rule, which is asserted with practical unanimity, that if an officer of a municipal corporation   *   *   *   be wrongfully removed by the   *   *   *   removing authority, he is entitled to recover, provided the city has not paid any other person for the performance of the duties of the office. But for reasons of public policy, and recognizing payment to a *de facto* officer while he is holding the office and discharging its duties as a defense to an action brought by the *de jure* officer to recover the same salary, it is held in many jurisdictions that an officer or employee who has been wrongfully removed, or otherwise wrongfully excluded from office, *can not recover against the city* for salary during the period when his office was filled and *his salary paid to another appointee.*"

It would seem then, from the long line of authorities upon this subject, that, by almost the overwhelming weight of authority, a *de jure* officer can not recover the salary drawn by a *de facto* officer while said *de facto* officer was performing the duties of the office from which the *de jure* officer had been wrongfully evicted. There are some exceptions to this doctrine, Utah, Indiana, California and Maine, and perhaps others have held to the contrary doctrine. Some of these cases, an analysis will show,

were based upon decisions in other states, notably the Maine decision upon the New York cases; and apparently they overlooked the question as to whether the salary had been paid or not; but in the view that I take of this, that is the all important question.    I think from most all the authorities, where the salary has not been paid to the *de facto* officer, the *de jure* officer is entitled to recover full compensation for all the time that he was out of office.    It is needless to cite authorities upon this, for I have already alluded to several.    In my judgment, discussion on this question has almost been precluded, if not entirely so, by the case of *Steubenville* v. *Culp,* 38 O. S., 18.    In that case Culp was wrongfully removed from office, or rather, suspended by the mayor, who had authority to appoint during the vacancy, and that suspension would only be until the charges could be heard by the council.    The council sustained the mayor, and then Culp was removed.    Subsequently the council reversed itself and reinstated Culp.    Culp brought suit for his salary during the time that he had been kept from his office, but it had been drawn by the man appointed to succeed him, and the Supreme Court of Ohio held that that being so, the city of Steubenville could not be made to pay him likewise; in other words, that the salary was attached to the office, and if the duties of the office had been performed by a *de facto* officer, who had drawn the salary, the city had performed its full duty in paying for the services thus rendered, and could not be made to pay again.

Plaintiff seeks to distinguish this case from the one at bar, or, rather, the one at bar from the Culp case; but I think the argument he makes is a distinction without a difference.

It is conceded, I think, by the majority of the decisions, that the *de jure* officer would have a right to recover his salary from the *de facto* officer.    And it is conceded, I think, by the majority of these decisions, that a *de facto* officer could not maintain an action to recover from the municipality.    An argument is made from that, *ergo,* the *de jure* officer should be permitted to recover from the municipality, whether the salary had been drawn or not by the *de facto* officer.    I think that is rather a *non sequitur.*

I am now going to advert to the third defense; and I will state, in passing, that I do not think the third defense set up in the answer would be a defense, even though the amount earned was equal to or greater than the salary attached to the office, for I think that there is a distinction between an officer and an employee under a contract. If there has been a breach of contract and the employee has an action, it is an action for damages, not to recover necessarily the sum of money that he would have earned, but damages for breach of contract; and the amount of damages would be the amount that he had lost by reason of the breach. Indeed his duty would be to minimize the damages; and he could not sit idly by, when he might get like employment, and enhance the damages against his employer; and consequently, it would be his duty to get like employment if possible, and the amount that he earned while in such employment would go to minimize the damages. It is not so with respect to a public officer. It is based upon a contract of employment. He is an officer, which is evidenced by the fact that the court can restore him to that office, and has done so in this very case at bar. Not so in a contract of employment. The courts would have no power to restore to the position; all they could do would be to allow damages which would compensate the employee for the breach of contract.

So I do not believe the third defense sets up a good defense, and I have alluded to it thus fully only as it may have a bearing upon the conclusions I am compellled to reach with respect to the second defense.

Some of these men, whose cases I am now considering, earned nearly if not quite as much in outside employment as they would had they remained in the office of patrolman from which they were removed.

Now the city, by the agreed statement of facts, paid to the parties who were appointed to succeed the men removed the salaries attached to the positions, and the plaintiff in each one of these cases was earning money outside, and not performing the duties of his office. Of course it is agreed that they were ready and willing at all times to perform those duties, but it

would hardly seem right to give a premium to a *de jure* officer by allowing him to draw his salary for work that he did not perform and which was performed by another, and at the same time retain as his own large sums of money which he had earned.

I therefore arrive at my conclusions with less fear of doing an injustice to the plaintiffs, because the records in each of these cases show that the plaintiffs earned large sums of money, the plaintiff Luttner earning the smallest sum of any, to-wit, $525.

I am therefore of opinion, and so hold, that from the 8th day of June down to the 22d day of July, inclusive, the plaintiff Luttner is not entitled to draw the salary attached to the office of patrolman, for the reason that Ress was appointed to succeed him and drew the salary of the office. The salary not having been drawn by his successor from the 25th day of April down to the 8th day of June, exclusive, the plaintiff is entitled to recover from the city whatever sum would be due for that period of time. And a like entry will be made with respect to each of the other plaintiffs. A judgment will be entered for each for the sum that each would be entitled to from the 25th day of April down to the 8th day of June, 1911, with interest from said date.

The costs will be adjudged against the city in each case. .