HENRY M. NOEL v. CITY OF SAN ANTONIO.

No. 707.

**1. Municipal Corporation—Creation of Debt—Limitation of Power.**

A municipal corporation entered into a contract whereby it executed its notes payable annually for ten years, and bearing interest, in payment for the construction of garbage furnaces, but made no provision at the time to collect annually a sufficient sum to pay the interest thereon and to create a sinking fund of at least two per cent thereon, as required by sec. 5, art. 11, of the Constitution. Six years previously the corporation had issued and sold bonds for the purpose, amongst others, of erecting such furnaces, but the contract above stated was made without any apparent reference to such bonds or the proceeds received from their sale. Held, that the contract was illegal and void.

**2. Same—Liability for Benefit Received.**

A municipal corporation cannot be made liable on the ground of having received the benefit of a contract made by it, where such contract is violative of a constitutional provision.

**3. Same—Contract by Ordinance.**

Where the charter of a municipal corporation provides that the city council shall exercise its power over the city finances by ordinance, it cannot by motion and resolution authorize the mayor to enter into a valid contract for the expenditure of a large sum of money evidenced by interest bearing notes of the city and running for ten years.

**4. Same—Estoppel.**

The application of the doctrine of estoppel to municipal corporations is confined to cases in which they have the power to contract, but cannot be applied to render valid and binding a contract the corporation was prohibited from making.

APPEAL from Bexar.  Tried below before Hon. R. B. GREEN.

*Chas. W. Odgen* and *Clark, Summerlin & Fuller,* for appellant.—1. The making of a contract which provided for the disbursement of a fund in the treasury of the city, set aside for a special purpose, is not a legislative act, and it is therefore not necessary that it should be done by or- dinance; but is a ministerial act through which the city council is exercising its control over the city and its property and finances, and may therefore be done by resolution, or motion.  Section 42, city charter of the city of San Antonio; 1 Dill. Mun. Corp., 4 ed., par. 307, and note; 1 Beach, Public Corp., par. 484, 254.

2.  The court erred in excluding from evidence the records, transcripts, documents, resolutions, papers and the contract based thereon, upon the objection of the defendant, as is set forth in appellant's bill of exceptions, because the appellant, having offered to prove that the said garbage furnaces contracted for had been constructed in full compliance with the terms and provisions of said contract, and had been accepted by the city, and, therefore, so far as the appellant was concerned, the contract was an executed contract, and the objection that the authority to make the same was not given by ordinance, was not well taken, and should not have been sustained by the court.  San Antonio v. French, 80 Texas, 578;  San Antonio v. Lewis, 9 Texas, 69;  Penn v. Laredo, 26 S. W. Rep., 636;  City of Denison v. Foster, 28 S. W. Rep., 1052;  Hitchcock v. City of Galveston, 96 Texas, 341;  Fort Worth City Company v. Smith

Bridge Company, 151 U. S., 294; McQuire v. City of Rapid, 28 Am. and Eng. Cor. Cases, 379; Brown v. City of Atchison, 17 Pac. Rep., 465; 2 Dill. Mun. Corp., 936; 1 Beach, Public Corp., 707.

*R. B. Minor,* for appellee.—1. Without an ordinance of the city council of the defendant city authorizing the contract offered in evidence by appellant, the said contract and all of the other evidence offered in connection therewith, were properly excluded. Charter of city of San Antonio, secs. 1 (Pt. 4), 3, 42, 43 to 103, 47, 48, 49, 90, 91, 92, 93, 95; City of Bryan v. Page, 51 Texas, 532.

2. The contract offered in evidence by plaintiff (appellant) being by its express terms a contract of indebtedness on the part of a city, and the other documentary evidence offered therewith being merely in support of the contract, then, in the absence of proof of a provision made by said city at the time of making this contract (creating this alleged debt) for levying and collecting annually a sufficient tax to pay the interest on such debt and provide a sinking fund for its ultimate payment, without which provision the contract must have been void, such contract and all the documentary and other evidence in support of it ought to have been excluded on that ground. Texas Constitution, art. 11, secs. 5, 7; City of Terrell v. Dessaint, 71 Texas, 770; Citizens' Bank v. City of Terrell, 78 Texas, 450; Biddle v. City of Terrell, 82 Texas, 333; Texas Water and Gas Co. v. City of Cleburne, 1 Texas Civ. App., 587; Millsap v. City of Terrell, 60 Fed. Rep., 193; Quaker City National Bank v. Nolan County, 50 Fed. Rep., 660; Marcy v. Township of Oswego, 92 U. S., 637 (dissenting opinion of Justices Miller, Davis and Field); Buchanan v. Litchfield, 102 U. S., 278; Northern Bank of Toledo v. Porter Township, 110 U. S., 608; Dixon County v. Field, 111 U. S., 83; Litchfield v. Ballon, 114 U. S., 190; Lake County v. Rollins, 130 U. S., 662; Lake County v. Graham, 130 U. S., 674; Hedges v. Dixon County, 150 U. S., 182; 1 Dillon, Mun. Corp., (4 ed.) note 1, p. 607, sec. 529a, note on p. 612.

3. The attempted contract of indebtedness on the part of the city to Garretson being absolutely void, because made in violation of the sinking fund and interest clauses of the constitution, the fact that the contract may have been performed by Garretson and the work accepted by the city (if such were the facts) would in no way cure this fatal defect, nor enable Garretson or plaintiff as his assignee to recover upon the transaction in any form, not even for benefits received by the city. Citizens Bank v. City of Terrell, 78 Texas, 450; Dibble v. City of Terrell, 82 Texas, 333; Litchfield v. Ballon, 114 U. S., 190, and authorities cited above.

FLY, ASSOCIATE JUSTICE.—On November 21, 1893, appellant filed this suit, seeking to recover of the city of San Antonio the sum of thirteen thousand dollars. The basis of the suit was a contract entered into between one W. H. Garretson and appellee for the construction of

two furnaces to be used for the destruction of city garbage. It was alleged that the city agreed to pay for the furnaces the sum of $13,000, in ten notes, each for $1300, one payable annually for ten years, each bearing 6 per cent interest from date of acceptance of the furnaces. A full compliance with the terms of the contract was alleged on the part of Garretson, and that the notes had been transferred to appellant on April 4, 1893, being on the date of the execution of the contract, and before any work done on the furnaces. A failure to pay the debt was alleged. In a supplemental petition it was alleged that on the date of the contract the city of San Antonio had in its treasury $15,000, the amount of money arising from the sale of bonds theretofore made for the purpose of erecting two garbage furnaces, and that the ten notes represented said garbage fund, that it had been set apart for said purpose, and that appellant had no interest in the question of the validity of the bonds, as the money was in the treasury when the contract was made. It was also alleged that the issuance of the bonds was authorized by the vote of the taxpayers, and that provision had been made to pay the interest on the same and to create a sinking fund of two per cent thereon. Appellee filed a general demurrer, special exceptions and answer. The cause was tried before a jury and a verdict instructed for appellee.

During the course of the trial, appellant attempted to introduce evidence of the adoption of a resolution on February 28, 1887, by the city council, setting forth that steps should be taken to erect garbage furnaces, of the authority given the mayor on March 18, 1887, to order a special election to obtain authority to issue $150,000 worth of five per cent bonds, the proceeds to be used in erecting a city hall, courthouse and jail, two garbage furnaces, rock crushers, street rollers and street sweeping machines; to show that the election took place on April 30, 1887, and resulted in authority being given for the issuance of the bonds; to show authority given for the printing, engraving and sale of the bonds, and to show that the garbage fund was credited with $15,000, and that it still had to its credit a large part of the fund in March, 1889. The following excerpt from the minutes of the city council: "April 3, 1893. W. H. Garretson proposing to build two garbage furnaces for $13,000, and run same for thirty days, which was endorsed by Dr. Menger and committee on health and sanitation. The motion of Alderman Elmendorf, that it be accepted and the mayor authorized to enter into contract for same, was adopted by unanimous vote." The contract on which the suit was based, ordinances providing for taxes to pay the interest and create a sinking fund on the bonded debt of the city for the years from 1887 to 1893, inclusive, and an ordinance permitting the aldermen in certain contingencies to elect one of their number mayor pro tempore, were also offered in evidence. The whole of the testimony was objected to for the following reasons, to-wit:

"1.   Because there is no proof that any provision was made, at the time the alleged contract between the city and Garrotson was entered

into, for the levying of a tax to provide a sinking fund for and to pay the interest on the debt alleged to have been created by the making of said alleged contract, as is required by the constitution of the State.

"2. This contract appears on its face to have been, subsequent to its execution and delivery, altered, in that the stipulation as to the capacity of the furnaces is changed, or the cost of the same changed, from the original amount of $5000 for one crematory furnace to $13,000 for two crematory furnaces, and also altering the stipulation as to the time in which a given quantity of garbage should be cremated, namely, from twelve hours to twenty-four hours for the same quantity of garbage, and if not changed in that regard, it is in that respect so contradictory as to be void for uncertainty.

"3. Because there is no proof of authority from the city council of the city of San Antonio to the mayor, or acting mayor, who is stated to have executed this contract, for the making of the same because the pretended authority of the city council is shown to have been given by motion, whereas it is required by the charter that the power of the council in this matter should be exercised by ordinance.

"4. Because there is no proof that at the time of the issuance or at the time of the sale of the bonds issued for the purpose of constructing the garbage furnaces, any provision was made for the levying of a tax to provide a sinking fund for and pay the interest on the debt created by the issuance or sale of said bonds."

The court overruled all the objections but the third, which was sustained, and appellant declining to proceed further, a verdict was instructed for appellee. The only testimony introduced, or which was attempted to be introduced, besides that enumerated, was that of W. H. Garretson, who swore that he was the man with whom the contract was made, and that the interlineations of which complaint was made in the objections to the rejected testimony were made before the contract was signed. There was no evidence that the furnaces were ever completed as contracted for. We quote the following from the contract that was rejected as testimony: "And the party of the second part agrees, in consideration of faithful performance herein, made by said party of the first part, and upon the satisfactory test of said furnace as hereintobefore provided, to pay for the said furnace the sum of thirteen thousand dollars, payable as follows: In ten notes payable annually for the amount of thirteen hundred dollars each, bearing six per cent. interest from acceptance, payable at San Antonio National Bank, interest payable annually."

The constitution (art. 11, sec. 5) provides that, "No debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon, and to create a sinking fund at least two per cent. thereon." It is further provided in section 7 that, "no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent. as a

sinking fund." While the first and last portion of section 7 refers to counties and cities on the coast of the Gulf of Mexico, the portion above quoted has been held to refer to each and every city and county in Texas. City of Terrell v. Dessaint, 71 Texas, 770.

The language of the above constitutional provisions is too plain to require explanation or construction, and too positive to admit of evasion. In unambiguous terms it is provided that on the creation of any debt in any manner by any city or county, provision must be made at the time of its creation for the annual interest and two per cent. sinking fund. Says Judge Gaines, in the Dessaint case, above quoted: "The language is general and unqualified, and we find nothing in the context to indicate that the framers of the constitution did not mean precisely what is said, that is, that no city should create any debt without providing by taxation for the payment of the sinking fund and interest." Does the rejected testimony indicate that this constitutional rule was complied with in making the contract that forms the basis of this suit? We are of the opinion that it fails to do so. On the 4th of April, 1893, the contract was signed by Garretson, and by French, the acting mayor of San Antonio, and there is no pretense that it was a cash transaction based on money theretofore raised on bonds voted by the taxpayers, but it is provided that the debt of $13,000 shall be paid in ten annual payments evidenced by the promissory notes in the sum of $1300 each and bearing interest at the rate of six per cent. per annum. The whole transaction was independent of and without reference to any sums that may have been realized from the sale of bonds issued in 1887, six years before the contract was executed. If, as contended by appellant, it was a contract based on money then in the treasury, why give those interest-bearing evidences of debt payable so long in future? A cash transaction providing for the consideration to be paid in ten years' payments with a good rate of interest would be an absurdity and a contradiction of terms. As before stated, there is no connection whatever shown by the evidence between the bonds issued in 1887, and the contract made in 1893, and if at that time there was a dollar of the money realized from bonds in the city treasury, it does not appear in the record. We do not mention the latter fact as having controlling influence on our decision, for if it had been shown that the money realized from the sale of the bonds for garbage furnaces was in the treasury, we hold that it would not render valid a contract in which the consideration was evidenced by notes due on ten yearly payments, no action being taken at the time to meet the constitutional provision as to interest and sinking fund. If a contract made six years after the issuance of bonds, and made without any apparent reference whatever to the bonds, can be upheld by proof of provision having been made at some time for the payment of the interest and the creation of a sinking fund for the whole city debt, then the constitutional provision embodied in sections 5 and 7 are vapid and unprofitable declarations that utterly fail to attain the object

intended.  Money may have been and doubtless was raised by the sale of bonds to erect garbage furnaces and may have been expended for that purpose, but the contract shows upon its face that it was never contemplated that the furnaces in question should be paid for out of it.

But it is urged that the contract is an executed one, the furnaces having been built according to the terms of the contract, and equity and good conscience require that the ciy pay for them, although the contract was made in violation of the constitution.  We have seen no authority that would sustain such a proposition.  In the case of French v. City of San Antonio, 80 Texas, 573, a contract might be implied to pay the rent of a house, used by the city, because the city had the authority to make the contract.  The consideration was to be paid out of current funds. It may be, says the opinion, that when a municipal corporation has received the benefit of a contract which it had the power to make, but which was not legally entered into, it may be compelled to do justice and to pay the consideration, or at least pay for what it received."  This ruling is based on the ground that in such cases the law will imply a contract, and it is held that on no other state of facts will the implication arise.  The implication can never arise that a contract was made that is violative of the constitution.  Berlin Iron Bridge Co. v. City of San Antonio, 62 Fed. Rep., 882; City of Bryan v. Page, 51 Texas, 532; Zottman v. San Francisco, 20 Cal., 96.  None of the authorities cited by appellant militate against the position taken by this court.

It is provided in section 42 of the charter that, "the city council shall have the care, management and control of the city and its property and finances; and shall have power to enact and ordain any and all ordinances not repugnant to the constitution and laws of this State, and such ordinances to alter, modify or repeal, and shall have power by ordinances;"—and then follow sections from 43 to, and including 102, enumerating the different powers and duties of the city government. Each of these sections is controlled by and connected with section 42, above quoted, which prescribes the manner in which the powers and duties enumerated in each section must be performed, as much so as though it were inserted before each of them.  The mode prescribed is by ordinance, and being expressly prescribed, a resolution or motion will not be held equivalent to the ordinance.  1 Dill. Mun. Corp., sec. 307 and note; McGavock v. Omaha (Neb.), 58 N. W. Rep., 543; Board of Education v. DeKay, 148 U. S., 591.

The authority for entering into the contract must be found, if at all, in one or more of the sections from 43 to 102, and unless the contract with appellant was entered into by ordinance, it must perforce be held invalid.  Says Chief Justice Marshall, in Head v. Insurance Co., 2 Cranch, 127:  "The act of incorporation is to them an enabling act; it gives them all power they possess; it enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated."

Section 2 of the charter prescribes the form for all ordinances as follows: "The style of the ordinances shall be: "Be it ordained by the city council of the city of San Antonio." This charter provision is as essential to the validity of the city ordinances as the enacting clause to the validity of the statutes. The position assumed does not inhibit, nor in any manner interfere with, the payment of the current expenses of the city, by motion or resolution, but is an enunciation of the proposition that under the provisions of the charter the municipal authorities of the city of San Antonio cannot enter into a valid contract for the expenditure of large sums of money, evidenced by interest-bearing promissory notes of the city, running for a great length of time, in violation of the demands of its charter.

Recurring to the proposition that the city is estopped, the contract having been executed, from setting up its invalidity, it may be said that, as a general rule, the doctrine of estoppel applies alike to corporations and individuals. But it cannot be applied to render valid and binding a contract that the corporation was prohibited from making. The application of the doctrine of estoppel to municipal corporations is confined to cases in which they have the power to contract. But where "the act undertaken was in and of itself ultra vires of the corporation, no act of that body can have the effect to estop it to allege its want of power to do what was underaken." Bigelow, Estop., 466, 467; State v. Murphy (Mo.), 31 S. W. Rep., 784; Union Depot Co. v. St. Louis, 76 Mo., 393; Railway v. Railway, 118 U. S., 461; Railway v. Steamboat Co., 107 U. S., 98; Davis v. Old, 131 Mass., 258.

The charter of the city of San Antonio was granted for the public good, and every duty enjoined, obligation required, and power granted, is expressed in that instrument, the whole being governed and controlled by the constitutional provisions on the subject. The contract entered into with appellant was in violation of the constitution and the charter, and the municipal authorities had no power to make it. Having entered into the invalid and illegal contract, it was the duty of the city council to rescind and repudiate it at the earliest moment. It may be that justice "moved with a leaden heel", but the act, though tardy, was right when at last done. When the council tries to perform this act of justice to the municipality, their attempt is claimed to be the basis for a suit against the corporation. We do not believe that the breach of such a contract can form the basis for any right of action. "To hold", says the Supreme Court of the United States, in Thomas v. Railway (101 U. S., 85), "that this can be done is, in our opinion, to hold that any act done under a void contract makes all its parts valid, and that the more you do under a contract forbidden by law, the stronger the claim to its enforcement in the courts."

The non-enforcement of the contract may be a hardship upon the appellant, but it is one that he brought upon himself. He voluntarily entered into a contract which he knew, or at least is charged with know-

ing, was unconstitutional and void, and has not placed himself in a position to obtain redress at the hands of the courts. The judgment will be affirmed.

*Affirmed.*

Delivered November 13, 1895.

JAMES, Chief Justice, did not sit in this case.

Writ of error refused.