WALTER BULLIS, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed June 18, 1908—Rehearing denied October 8, 1908.*

1. OFFICES—*police patrolman suing for salary must show legal existence of office.* A party suing a city for salary as a police patrolman must prove the legal existence of the office and his legal right to hold it, as such an office was unknown to the common law and wherever it exists it is the creation of a statute or ordinance.

2. SAME—*incorporation of city under general law abolishes office of police patrolman.* Organization by a city under the general law abolishes, *eo instanti,* all offices existing under the city's former special charter except offices within the saving clause of the general law, which are those of mayor, city council, city clerk, city attorney and city treasurer.

3. SAME—*the office of police patrolman must be created by ordinance.* Where the office of police patrolman, existing under a city's special charter, is abolished by the city's act of organizing under the general law, there is no such office until it is again established by ordinance, and an ordinance which merely provides that the police force shall consist, among other officers, of "police patrolmen now in the employ of the city," does not create the office.

4. SAME—*resolutions and appropriation ordinances not admissible to establish existence of ordinance.* A resolution of the city council in the form of an order authorizing the superintendent of police to increase the number of police patrolmen, and appropriation ordinances showing appropriations for certain years for the salaries of the police patrolmen, are not admissible to establish the existence of the office of police patrolman.

5. SAME—*when ordinance does not create office of police patrolman.* An ordinance providing that the police department shall embrace as many patrolmen "as has been or may be prescribed by ordinance," cannot be regarded as creating the office of patrolman.

6. SAME—*earnings or opportunities to earn cannot be shown to reduce damages in action for salary.* Salary is incident to the title to the office and not to its occupation, and if one having a legal right to an office is wrongfully prevented by a city from performing the duties of the office he may recover his salary for the period he was so prevented, where it has not been paid to anyone performing the duties of the office; and his earnings or opportunities to earn cannot be shown by the city in reduction of damages.

7. SAME—*when city is not estopped to deny that plaintiff is a de jure officer.* Where the office of police patrolman has never been

created by ordinance, the facts that the office has been placed in the classified service, that the name of a person has been carried on the pay-rolls as police patrolman, that the pay-rolls were certified by the civil service commission, that charges were preferred against him as police patrolman and hearing had resulting in his discharge, do not estop the city to deny that he was a *de jure* officer in his suit to recover salary after his re-instatement.

8. SAME—*when a suit for salary is not premature.* Where the proceedings under which an officer in the classified service was discharged have been quashed on *certiorari,* and the party, after being re-instated in office, brings suit to recover back-salary for the period for which he was discharged, the fact that the city files new charges after the suit is brought, including the same charges on which his former discharge was based, does not authorize a dismissal of the suit as premature nor require a continuance until after a hearing of the charges.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. C. BARNES, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, CLYDE L. DAY, and EMIL C. WETTEN, for appellant.

A. D. GASH, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from a judgment against the appellant, in favor of the appellee, for salary as a police patrolman. The Civil Service act was adopted by the city of Chicago in 1895, and the appellee, having taken the examination, was on March 14, 1898, certified for appointment as patrolman and thereafter served as a patrolman until November 1, 1903, when he was suspended by the chief of police under charges, and after a hearing thereon was discharged on January 15, 1904. On *certiorari* proceedings begun by the appellee the superior court of Cook county quashed the proceedings resulting in his discharge, and this judgment, on appeal to the Appellate Court and from that court to the

Supreme Court, was affirmed, whereupon appellee was re-instated on June 1, 1906, and thereupon began this suit for his salary from the date of his suspension until his re-instatement. A trial before the court without a jury re-sulted in a judgment for $2660.20 in favor of the appellee, which has been affirmed by the Appellate Court, and the defendant has appealed to this court.

The appellee by his suit was demanding the salary of the office of police patrolman, and it was therefore incum-bent on him to show the legal existence of the office and his legal right to hold it. (*Stott* v. *City of Chicago,* 205 Ill. 281; *People* v. *City of Chicago,* 210 id. 479; *McNeill* v. *City of Chicago,* 212 id. 481; *Moon* v. *Mayor,* 214 id. 40; *Kenneally* v. *City of Chicago,* 220 id. 485.) The office of policeman or police patrolman was unknown to the com-mon law, and wherever such office exists it is the creation of the statute law or municipal ordinance. (*Stott* v. *City of Chicago;. People* v. *City of Chicago; Moon* v. *Mayor, supra.*) The affirmance by the Appellate Court of the judgment of the trial court has settled all questions of fact adversely to appellant. Objection was made by appellant to the introduction of certain evidence produced by appellee for the purpose of showing his legal right to the office of police patrolman.

By the charter of the city of Chicago passed in 1863 there was created the office of police patrolman. Chapter 10 of the charter established an executive department of the municipal government known as the board of police, hav-ing control of the police force and full power and authority over the police organization, government, appointments and discipline within the city. Section 6 of that chapter estab-lished the police force and created the offices of ninety po-lice patrolmen, and as many more as might be authorized by the common council on the application of the board of police. (Private Laws of 1863, p. 110.) The charter was amended in 1865, and the number of police patrolmen

whose appointment might be authorized by the council was limited to two hundred. (Private Laws of 1865, p. 288.) Again in 1867 the charter was amended by authorizing the council, on recommendation of the board of police, to provide by ordinance for additional police patrolmen without limit, except that such ordinance should require a vote of three-fourths of all the aldermen elected, to be taken by yeas and nays and entered on the record. The appellee introduced in evidence an ordinance, passed in 1867, fixing the number of police patrolmen at two hundred and fifty, and later ordinances of 1869 and 1870 increasing this number to four hundred.

This was the situation when, on April 23, 1875, the city became incorporated under the general law. The effect of the organization of the city under the general law was to substitute the general law for the special charter under which the city had been acting, and all the provisions of the special charter were repealed so far as they were inconsistent with the general law. This organization of the city under the general law determined the tenure of all officers under the special charter not within the saving clause of the act, which provided that the city officers in office at the time of organization under the general law "shall, thereupon, exercise the powers conferred upon like officers in this act until their successors shall be elected and qualified." Rev. Stat. chap. 24, art. 1, sec. 3; *People* v. *Brown*, 83 Ill. 95; *Law* v. *People*, 87 id. 385; *Crook* v. *People*, 106 id. 237.

The officers in office at the time of the adoption of the act who should exercise the powers conferred upon like officers by the act until their successors were elected and qualified, were only those officers holding under the special charter that answer to the same officers provided for in the general law. All other offices were abolished *eo instanti* by the adoption of the general law. (*Crook* v. *People, supra.*) The only offices provided for by the law itself were a

mayor, city council, city clerk, city attorney and city treasurer. Authority was given to the city council to provide, by an ordinance passed by a vote of two-thirds of the aldermen elected, for the election or appointment of such other officers as it might deem necessary. Until the city council did provide for the appointment of patrolmen, the provisions of the city charter having been superseded by those of the general law, there was no such office as patrolman.

Appellee introduced in evidence, without objection, an ordinance passed June 28, 1875, the fifth section of which provided that the police force should consist, among other officers, of "police patrolmen now in the employ of the city, which may be increased from time to time." The law required that the offices to be created by the city council should be filled by election by the voters of the city, or by appointment by the mayor with the approval of the council. It was not, therefore, a lawful exercise of power by the council to declare the individuals then in the employ of the city as police patrolmen to be officers of the city.

Appellee's name was included in a certificate of appointment of nineteen hundred patrolmen and he was sworn in with about two thousand other patrolmen. Even if it were conceded that the offices of four hundred police patrolmen continued after the organization of the city under the general law, it was necessary for the appellee to show that he was rightfully entitled to one of these offices, or that an additional number of offices had been created to one of which he was rightfully entitled. Appellee introduced in evidence article 1 of chapter 51 of the revised code of Chicago of 1897. Section 1477, which counsel for the appellee says in his brief was passed in 1881 though the record does not show when the same was passed, establishes a department of police, embracing, among other officers, such number of patrolmen as has been or may be provided by ordinance. In order to establish the creation of an additional number of officers the appellee introduced in evidence, over the objec-

tion of the appellant, the following extract from the proceedings of the city council on January 5, 1903:

"Ald. Cullerton presented the following order:

"*Ordered,* that the superintendent of police be, and he is hereby, authorized to increase the number of police officers on the police force by filling vacancies wherever they exist and are necessary, the total number of officers on the force, however, after such increase is made, not to exceed the number authorized to be appointed under the appropriation budget of 1901.

"Which was, on motion, duly passed by yeas and nays, as follows:"—followed by the names of sixty-six aldermen voting yea and one voting nay.

The appellee then introduced in evidence, over appellant's objection, the appropriation ordinance for the corporate purposes of the city of Chicago for the year 1901, showing the appropriation of $2,500,000 for 2500 patrolmen at $1000 each; also the appropriation ordinances for the years 1903, 1904, 1905 and 1906, showing appropriations in those years, respectively, for 2380, 2306, 2278 and 2196 patrolmen.

It was error to admit this evidence. The statute requires the action of the city council in providing for the election or appointment of officers, other than those mentioned in the statute, to be by ordinance. It cannot act by mere resolution. The order of the council of January 5, 1903, was only a resolution. It was not an ordinance and did not purport to be one. It was not styled in accordance with section 2 of article 5 of the City and Village act, which requires the style of ordinances to be, "Be it ordained by the city council of ..........." It purported to increase the number of police officers, but if any number of police officers had been theretofore authorized to be appointed it must have been done by ordinance, and that ordinance could not be amended or modified by a resolution of the council. (*People* v. *Mount,* 186 Ill. 560; *Chicago and*

*Northern Pacific Railroad Co.* v. *City of Chicago,* 174 id. 439; *Hibbard & Co.* v. *City of Chicago,* 173 id. 91.) So far as appears, the resolution was never approved by the mayor. Even if it had been in the form of an ordinance, the pamphlet in which it was contained did not purport to be a publication of the ordinance by authority of the city council. · It was merely the official record of proceedings of the city council meeting of January 5, 1903. The statute has not made the published proceedings of the city council evidence of the existence of an ordinance.

This resolution and the appropriation ordinances were offered for the purpose of showing the number of patrolmen authorized to be appointed. The resolution referred to the number of police officers authorized to be appointed under the appropriation budget of 1901. Since the resolution was not competent neither was the ordinance. The other appropriation ordinances were not competent, for it is not claimed that if there was no statute or ordinance establishing the office it could be legally established by the appropriation of money, by ordinance, to the payment of a salary to the person acting as an officer, and clearly it could not be. (*Moon* v. *Mayor, supra; Kenneally* v. *City of Chicago, supra.*) Section 1477 of the revised code, in providing that the police department should embrace as many patrolmen "as has been or may be prescribed by ordinance," cannot be regarded as creating any office of patrolman. (*Moon* v. *Mayor, supra.*) The word "prescribed," as there used, is equivalent to "established." On this record, whatever may be the fact, this evidence offered by appellant to prove that he was a police patrolman was not competent for that purpose.

It is argued that the appellant is estopped to deny that the appellee was a *de jure* officer by the fact that charges were filed against appellee as a patrolman. The classification of the officers and places of employment in the city by the civil service commission could not establish an office

which was not in existence before. The carrying of appellee's name upon the pay-roll or the certification by the civil service commission of pay-rolls containing his name was not evidence of the legal existence of his office of police patrolman. (*Kenneally* v. *City of Chicago, supra.*) If there was no such office as that which appellee was claiming to hold, it was wholly unnecessary to file charges against him to discharge him from the employment of the city. He might be discharged at any time without cause and without notice. The fact that charges were preferred against him and a hearing had has no element of an estoppel.

After the appellee's re-instatement and the beginning of this suit charges were again filed against appellee, which included, besides others, the same charges on which the proceedings which were quashed were based. The appellee moved to dismiss the suit as having been prematurely brought, or to continue it until after the hearing of these charges, claiming that they amounted to a continuation of the original charges, and that if appellee should again be discharged the discharge would date back to his first suspension, in 1903. This is an erroneous view. The proceedings based upon the charges made in 1903 were quashed. No attempt was made to proceed under those charges. On the contrary, appellee was re-instated in his position and no action was taken against him until after the bringing of this suit, when charges were again filed. The court properly overruled appellee's motions.

The appellant asked the court to hold as the law, propositions to the effect that the appellant was entitled to show, in reduction of the damages, the amount of money earned and received, or that might with reasonable diligence have been earned and received, by the appellee during the period covered by his suit. The court properly refused to hold these propositions. If appellee was legally entitled to the office of police patrolman, his legal right to the office carried with it the right to its salary. The salary is incident

to the title to the office and not to its occupation and exercise. If appellee was wrongfully prevented from performing the duties of his office he may recover his salary for the time during which he was so prevented, where it has not been paid to anyone performing the duties of the office. His earnings or opportunities to earn during that time were immaterial. *City of Chicago* v. *Luthardt,* 191 Ill. 516; *Andrews* v. *Portland,* 79 Me. 484; *State* v. *Carr,* 129 Ind. 44; *Rasmussen* v. *County Comrs.* 8 Wyo. 277.

The judgments of the Appellate Court and the superior court of Cook county are reversed and the cause remanded to the latter court for a new trial.

*Reversed and remanded.*