## CITY OF SAN ANTONIO v. COULTRESS.
### (No. 5307.)

(Court of Civil Appeals of Texas. San Antonio. June 22, 1914. On Motion for Rehearing, Oct. 21, 1914.)

1. OFFICERS (§ 94*)—EMOLUMENTS, RIGHT TO.

Before the emoluments of an office can be recovered, the claimant must show that the office has been created, and that he is a legal incumbent.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 132, 133, 136–138, 140, 141; Dec. Dig. § 94.*]

2. OFFICERS (§ 94*)—EMOLUMENTS, RIGHT TO.

To recover the emoluments of an office, the claimant must show that he is a de jure officer.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 132, 133, 136–138, 140, 141; Dec. Dig. § 94.*]

3. MUNICIPAL CORPORATIONS (§ 186*)—OFFICERS—POLICEMEN—NATURE OF OFFICE.

The position of policeman or patrolman was unknown to the common law, and, being a creation of municipal governments by ordinance, the establishment of such office in a valid manner must be shown to entitle a patrolman to recover against a city for the salary of the office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 510–517; Dec. Dig. § 186.*]

4. MUNICIPAL CORPORATIONS (§ 180*)—OFFICERS—POLICEMAN—ORDINANCE.

Under San Antonio charter, providing that the city council shall have power, by ordinance, to establish a police force, and to create any office deemed necessary, the position of policeman must be created by ordinance, and neither a resolution approving the appointment of one as policeman, nor acquiescence by the city in his appointment and payment of his salary, will make him the legal occupant of that position.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 449–457, 466, 482; Dec. Dig. § 180.*]

5. MUNICIPAL CORPORATIONS (§ 180*)—OFFICERS—POLICEMAN—ORDINANCE.

Where the city council of San Antonio, which was authorized to provide for a police department by ordinance, adopted an ordinance declaring that the police force should consist of one chief marshal and such patrolmen as the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

mayor and city council might deem necessary, the council cannot, by resolution, create the office of patrolman; the ordinance not specifying the number and not creating the office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 449–457, 466, 482; Dec. Dig. § 180.*]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by James Coultress against the city of San Antonio. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Geo. R. Gillette and Robt. G. Harris, both of San Antonio, for appellant. T. E. Simmang and Joseph Ryan, both of San Antonio, for appellee.

CARL, J. James Coultress sued the city of San Antonio for the recovery of the salary incident to the alleged office of policeman or patrolman for the remainder of his term, because of an alleged illegal discharge therefrom. The amount of the judgment recovered is $682.26 salary and $46.35, the value of two uniforms to which the appellee, Coultress, was entitled by virtue of his position. The trial was before the court without a jury, and judgment for appellee was as indicated.

Conclusions of Fact.

It was admitted that James Coultress, appellee, had been appointed a patrolman by the mayor of the city of San Antonio, which appointment was confirmed by the city council on July 17, 1911, and a commission issued to him as such, signed by the mayor and attested by the city clerk under the corporate seal of the city of San Antonio. It is denied that he was appointed to an "office." The said Coultress executed a bond as such patrolman on July 7, 1911, and the fact that the bond was dated July 7, and the commission dated July 17, 1911 was explained in this way: The mayor would make a lot of appointments, and those appointed would proceed to qualify and enter upon their duties. The written appointments were not prepared until later, and frequently would lay on the mayor's desk several days awaiting his signature. When signed, the appointments, which usually were not dated, would bear date as of the same date signed, or the date would be left blank and the party receiving such appointment would fill it in. Sometimes this date was put the same as the actual appointment, and again it would be fixed as of the date signed by the mayor. The bond executed refers to the appointment as having been made on July 7, 1911, and the evidence is sufficient to show that it was in fact made on that date.

It was also admitted that the appropriations out of which appellee's salary was paid were made monthly by the city council of said city, in a lump sum for the department pay roll upon which Coultress' name appeared. And, further, that appropriations of funds to pay the police department were made for the period during which appellee was to serve. Appellee entered upon his duties July 8, 1911, and served until August 26, 1912. On the last-named date he was asked to resign and declined. The chief of police thereupon told him he was discharged. The assistant city marshal, or chief of police, called up all the old employés and the new ones named to succeed those discharged, some having been reappointed after they had resigned in compliance with his request, and said to them:

" 'The names that you will hear me call out now will report for duty promptly at 7 o'clock to-morrow morning, and the names of those that are not called out, you will tender all that belongs to the city, gun, whistle, badge, key, to the locker and so on.' So he read the roll call out, and my name was not mentioned. * * * I was paid up to August 26, 1912." He says he never received any salary after that. "I was first told to resign, and as I did not resign, I was asked why I didn't resign, by Chief Lancaster. I told him I didn't resign because I wanted to keep on the force; he said, if I would not resign, I was dismissed. 'You are fired'—those are the very words." He says the mayor never discharged him. He did not know the mayor when he went in office, but Mr. Jones was mayor at the time.

Coultress was paid $70 per month, and was entitled to $22.50 for clothing, which he did not get. Appellee has never brought any suit to recover his alleged office of patrolman. The witness did not know who got his place, but saw another man on his beat. A patrolman is a policeman. The city council has never acted upon the discharge of appellee. It was shown that appropriations were made to cover the pay rolls for appellee's alleged unexpired term, and his name was on such pay rolls at the rate of $70 per month, but he was not paid for any of said time. There was due and unpaid to him the amount found by the trial court.

By reference to the charter of the city of San Antonio we find:

"Sec. 51. The city council * * * shall have power, by ordinance:"

"Sec. 65. To establish a police force and regulate the same. * * *"

Section 56, as amended by act of 1907, Special Laws, p. 562, reads in part as follows:

"To regulate and prescribe the duties and powers and compensation of all appointed officers, agents and employés of the city, and to require bonds, etc.; to create any office or agent deemed necessary for the good government and interests of the city, and to change and prescribe additional duties of all officers and agents provided that the powers prescribed by this charter for elective officers shall not be diminished."

"Sec. 20. The city council, or a majority thereof, may act by resolution in all cases except where an ordinance is by this act required. * * *"

"The Revised Ordinances" of the city of San Antonio, chapter 58, rule 1, published by

authority of the city council, contain this provision:

"The police force of the city of San Antonio will consist of the following grades: City marshal (ex officio chief of police), assistant marshal or marshals and patrolmen."

By an ordinance passed by the city council March 2, 1903, it was ordained that:

"The police force of the city of San Antonio shall consist of one chief marshal and two assistant marshals, one police matron, and such detectives and mounted and unmounted patrolmen as the mayor and city council may deem necessary."

### Conclusions of Law.

[1-5] In the view we take of this case it narrows down to the proposition as to whether the city of San Antonio has legally created the office of policeman or patrolman and whether, if that be true, appellee has been legally appointed thereto. That the mayor of San Antonio named him as such policeman, and that the city council confirmed same, may be taken as established. Before the emoluments of an office may be recovered, it is necessary that the claimant therefor should show: First, that the office has been created and is in existence; and, second, his legal right thereto. He must show that he is an officer de jure. The position of policeman or patrolman was unknown to the common law. It is a creation of municipal governments, by ordinance, derived from authority granted in charters of cities, or by statutory authority for the government of municipalities operating under the general law. The city of San Antonio operates under a charter which contains its authority for the establishment and maintenance of a police department.

Article II of the charter deals with the powers and duties of the city council, and the first section thereunder says, in part:

"Sec. 51. The city council * * * shall have power, by ordinance:"

"Sec. 65. To establish a police force and regulate the same. * * *"

"Sec. 56. To create any office or agent deemed necessary for the good government and interest of the city. * * *"

It will be noticed that section 51, which says that the city council shall have power by ordinance to do certain things, following, closes with a colon, and then the various things it is empowered to do by ordinance are enumerated under different section heads down to and including "Sec. 65. To establish a police force and regulate the same." Turn then back to section 20, and it reads:

"The city council, or a majority thereof, may act by resolution in all cases except where an ordinance is by this act required."

Section 65 would be meaningless standing alone and beginning as it does, "To establish a police force," etc., unless it refers back to and is thereby connected with section 51, which says the council by ordinance shall have power, among other things, "to establish a police force." The two sections must necessarily be read together. Now, the char-

ter is stating what powers the council shall have and how those powers are to be exercised, and in doing so, it is clearly stated that the council shall have power by ordinance to establish its police force. That means, and can only mean, that the council has that power when exercised in the manner prescribed, which is by ordinance. Section 20, giving the council power to act by resolution in all cases not otherwise required to be done by ordinance, must mean that where an ordinance is required a resolution would be insufficient.

The ordinance of the council of date March 2, 1903, wherein it was ordained that "the police force of the city of San Antonio shall consist of one chief marshal and two assistant marshals, one police matron, and such detectives and mounted and unmounted patrolmen as the mayor and city council may deem necessary," did not create the office of patrolman or policeman. If it did, how many such positions were created? It is true that section 65 gives the council the right to provide for that department, and by referring back to section 51, we see that it must be done by ordinance. If the ordinance quoted be relied upon to show the creation of the office, it will be noticed that no particular number is mentioned. The only limitation is such number as the mayor and city council "may deem proper." The only logical result or inference from this is that the mayor may appoint, and the council, by a simple resolution ratifying the same, may confirm, as many patrolmen as may be desired; and this in the face of the charter provision that it shall be done by ordinance.

"But when the statute requires that an act of a municipality be done in the form of an ordinance, or if such requirement is implied by necessary or clear inference, the act can only be done in that form, or perhaps its legal equivalent, and a resolution, especially if not adopted with all the formalities of an ordinance, is not sufficient." Dill. Mun. Corp. vol. 2, § 572 (5th Ed.); Noel v. San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263.

The contention is made, as we understand it, that even if the office of patrolman had not been expressly created by ordinance, the pay rolls carried appellee's name, and that an appropriation was regularly made by the council for the payment of his salary, and that by reason of that fact and the further fact that the council had approved his appointment, it would be construed as an appointment to the office. But the charter of the city was granted for the public good, and the powers of the council are defined in and circumscribed by that document. The city can only act as it is permitted to act in that legislative grant. That instrument says that the council shall act by ordinance in matters of this kind, and this it has not done. The doctrine of estoppel and ratification cannot aid that which never had a legal existence. Mr. Justice Fly, in the Noel Case, supra, quoted with approval from the Supreme

Court case of Thomas v. Railway, 101 U. S. 85, 25 L. Ed. 950, where it was said:

"To hold that this can be done is, in our opinion, to hold that any act done under a void contract makes all its parts valid, and that the more you do under a contract forbidden by law, the stronger the claim to its enforcement in the courts."

The ordinance of March 2, 1903, does not specify the number of policemen or patrolmen, and does not create that office. It does not say that there shall be not more than a certain number. The powers of the city council granted it by the state in its charter cannot be delegated to the mayor or to the police committee, but can only be exercised as therein pointed out, viz., by ordinance. And this has not been done. It is no answer to say that occasions frequently arise when the force should be either larger or smaller, because the council could provide for such emergencies.

In Moon v. Mayor of Champaign, 214 Ill. 40, 73 N. E. 408, it is said:

"It does not appear from the petition that the office which the appellant claims the right to hold and exercise had or has legal existence. The office of policeman or police patrolman of which the petitioner claims he was the legal incumbent, if it existed at all, must have been created by an ordinance of the city of Champaign. * * * The petition set forth the adoption by the city council of the city of Champaign of an ordinance establishing a police department. Section 355 of this ordinance, which seems to be relied on by appellant as creating the office of policeman, is as follows: 'The police department of the city of Champaign shall consist of the mayor, the aldermen, the police magistrate, who shall be ex officio members of the police department, and a chief of police, and as many policemen as the city council may from time to time provide for, and one keeper of the city prison, and such other officers as are given police power by ordinance of the city.' This section * * * does no more than to create the police department of the city and to declare what officers of the city should compose the department. The provision that the police department should consist, in part, of 'as many policemen as the city council may from time to time provide for' cannot be construed to create any one or more offices of policemen of the city. Its true meaning is that the police force of the city shall comprise such policemen as shall be legally invested with that office. This section does not itself purport to create the office of policeman; and it has no such legal effect. It does not appear from the petition that the city council had before that adopted an ordinance creating the offices of policeman of the city, or that such an ordinance has since then been adopted."

And this decision further reads:

"Neither appointment by the mayor nor confirmation by the council, or both, can operate to create an office. Nor can an office be legally established by the appropriation of public money, by ordinance, to the payment of the salary or compensation of the person acting as an officer."

And further reads: "The demurrer was properly sustained."

In the case of Keegan v. City of Bayonne, 81 N. J. Law, 120, 78 Atl. 1053, Bergen, J., said:

"By the charter the power to establish, regulate, and control a police force in the city must be exercised by ordinance, but the ordinance under consideration confers upon the mayor and council the power to appoint not only two sergeants, but as many more as they may see fit; that is, it is attempted to empower them to appoint an indefinite number of police sergeants, who are to perform such duties as the mayor may prescribe, and the council approve, thereby establishing, regulating, and controlling the police force by a method other than by ordinance as required by the charter. The fixing of the number of officers and the prescription of their duties is an essential part of the establishment and regulation of a police department, and this the charter under consideration requires shall be by ordinance, and it is not a compliance with the charter to ordain that the mayor and council may appoint as many police sergeants as they may determine upon, with the power to prescribe all their duties, for that would delegate to the appointing power the determination of how many police sergeants there should be, and also what duties they should each perform. This would effect the establishment, regulation, and control of the police department, not by ordinance, but by appointment. If the words 'or more' be treated as surplusage and the ordinance held to provide for two such officers, they were both filled when this appointment was attempted, and there was no office provided by ordinance to which the respondents could assign the relator."

See, also, Bullis v. City of Chicago, 235 Ill. 472, 85 N. E. 614; Dolan v. City of Louisville, 142 Ky. 818, 135 S. W. 272; Kammerer v. City of Louisville, 142 Ky. 848, 135 S. W. 411; City of Bryan v. Poye, 51 Tex. 532, 32 Am. Rep. 637; City of San Antonio v. French, 80 Tex. 578, 16 S. W. 440, 26 Am. St. Rep. 763.

In the case of City of Waco v. Prather, 35 S. W. 962, Justice Collard said:

"Our opinion is that, inasmuch as the city council had power to pass ordinances by statute, it could proceed to contract for and to construct the improvement of the streets by ordinance only, and that the acts of the council, as shown by the minutes, were not alone sufficient to empower the city to do the work, and to create a debt against property owners that could only be paid by the levy of a tax. The fact that the tax was authorized by an ordinance which declared a lien for part of the cost of the work does not meet the objection made. The ordinance to tax was after the work was done and the debt created. It could not justify what had been previously illegally done. All that was done to create the debt and fix the lien upon owners of property abutting on the improved street was illegal and void, and could not be cured by ordinance to levy a tax to pay the debt. * * *

"The Waco city council acted by ordinance in assessing and levying the taxes, but this was not sufficient. The ordinance was passed after the work was done, and no ordinance was passed as the foundation to improve the streets, incur the expense, make the contract creating the necessity for the tax, and fixing the lien upon property supposed to be benefited by the work. An ordinance was necessary as a foundation for all the subsequent proceedings, and its omission could not be supplied by ordinance after the debt was incurred authorizing the levy of a tax to pay the debt."

So we have seen that the burden was on appellee to show that the office of patrolman which he held had been legally created, and that he had been legally placed therein. We have also seen that the city charter author-

izes the city council by ordinance to provide for a police force, and that the council attempted to create such a department by the ordinance dated March 2, 1903. But the number was not fixed, and this court cannot say that the office appellee claims has ever been established by the council as provided by law. This holding is not in conflict with City of San Antonio v. Bodemann, 163 S. W. 1043, because in that case the petition alleged that Bodemann had been regularly appointed and had qualified as an officer, and the authority for such appointment and qualification was not an issue before the court. It was there held that as against a general demurrer which this court supplied, the petition did show a cause of action.

Thus it has been seen that a certain simple method of procedure has been provided by the charter for the establishment of a police department; but that method has not been followed. No ordinance is shown creating the office to which appellee was appointed and confirmed by the council; and no act by the mayor or resolution by the council, confirming an appointment to an office which has never been created, can establish such position. In short, the charter requires the position to be created by ordinance, and that is the only way it can be done; and to say that the failure to provide by ordinance the office could be remedied by a simple resolution confirming the patrolman's appointment by the mayor would be to say that the provision of the charter could be rendered nugatory and of no effect. No amount of resolution of confirmation can make an office which never had an existence; for, being without power to create the department and office except in a certain way, and it has not been done that way, no confirmation can vitalize that which was never in legal existence.

To the argument that the department of police has been so maintained for many years, we answer: That does not make it any more legal. It may be that the reason the department was required to be established by ordinance was because the people could then know how many policemen they would have, and not leave such an important branch of the city government and the number thereof to the good judgment or caprice, as the case might be, of those in authority at any particular time. The patrolman himself has a right to know when he has been appointed and qualified that it is for a definite period of time, unless dismissed in a legal way for cause, and he should not be left to feel that he is a mere officer at pleasure or sufferance. For this reason, if for no other, the charter should be followed and the places created with all the formality set forth in sections 51 and 65. It is an easy matter to provide for emergencies and to make the system flexible. This can all be done by ordinance, but no part of it can be done by resolutions of confirmation.

We conclude that no cause of action was shown, that the general demurrer should have been sustained, and that the judgment should be reversed and rendered in favor of the city. This makes it unnecessary to deal with the other assignments of error.

Reversed and rendered.

### On Motion for Rehearing.

The city of San Antonio has filed a motion to have corrected the findings of fact so as to show that the name of appellee, Coultress, was taken off the pay rolls as a policeman when he was discharged. This is correct, for it is alleged in plaintiff's second amended original petition, which reads in part as follows:

"Sixth. * * * And continued to discharge them until on or about the 24th day of August A. D. 1912, when plaintiff was illegally discharged * * * and his name was taken off the pay rolls of the city. * * *"

"Appellee charged and appellant admitted— besides it was proven and not denied—that his name was taken off the pay roll by the city authorities after his illegal discharge."

This last is taken from the brief of appellee. What we should have said is that the usual appropriations were made in the budgets for the place Coultress had held, but we do not find that such provisions were made for his salary, or for any particular place. His name was taken off the pay roll about August 24, 1912, and thereafter he was considered as discharged by the city authorities. This motion is granted and the original findings of fact modified as herein indicated.

Appellee, in his motion for a rehearing, insists that the laws of the state of Texas and the courts recognize a policeman as an officer. We do not deny this, but that is not the matter before us. The question here is as to whether that office has been legally created; for if it has, then certainly the law recognizes the office. But when our statutes and courts recognize such office, it presupposes a legal creation of the same. But the fact that the position is acknowledged by law to be an office does not lead to the conclusion that because the law recognizes such office, the same need not be legally created. The office only comes into existence when created in a legal manner, and when that is done, of course the state law recognizes the office. The state law recognizes the position of county auditor, and yet some counties have them and others do not. It is only when the place is created in the manner provided by law that the same is entitled to recognition as an existing office.

It is contended that the two ordinances, one dated March 2, 1903, and the other contained in the revised ordinances in force August 1, 1899, and published by authority of the city council, as authorized by sections 219 and 220 of the 1870 charter, became effective before the present charter of 1903,

and are therefore not founded upon it, because section 50 of the 1903 charter continues them in force. That section reads in part:

"And all ordinances of the city of San Antonio now in force not contrary to the provisions of this act and the laws of this state shall continue in force until repealed."

But these ordinances would be in conflict with the charter of 1870, almost, if not entirely, as much as with the present charter or the charter of 1903. For when we examine the 1870 charter we find that section 42, in enumerating what powers the council has, says: " * * * And shall have power by ordinance." Then with various sections beginning with the phrases, "To borrow money," "To appropriate money," etc., on down to section 50, where we find: "Sec. 50. To establish, regulate and support night watch and police, and define the duties thereof." This clearly refers back to the requirement that this be done by an ordinance. So, whether we look at the proposition from the standpoint of the 1870 charter or the present one, there is practically no difference. The whole matter summed up is that the department must be established by an ordinance, and the office of policeman cannot be created by resolution. Appellee has not shown that the office he seeks to recover (or rather the salary thereof) has ever been legally established.

Appellee's motion for a rehearing is overruled.