Peggy Ann JONES, Appellant,

v.

The STATE BOARD OF TRUSTEES OF the EMPLOYEES RETIREMENT SYSTEM OF TEXAS et al., Appellees.

No. 18257.

Court of Civil Appeals of Texas, Dallas.

Jan. 31, 1974.

Lewis H. Albright, Scurry, Scurry, Hodges & Johnson, Dallas, for appellant.

John L. Hill, Atty. Gen., David W. Pace, Asst. Atty. Gen., Austin, for appellees.

CLAUDE WILLIAMS, Chief Justice.

The sole question presented by this appeal is whether appellant is entitled to recover death benefits pursuant to legislative grants in Vernon's Tex.Rev.Civ.Stat.Ann. art. 6228f (Supp.1973), payable to the surviving widow and minor children of a member of an organized police reserve force who suffers violent death in line of duty. The trial court rendered a take nothing summary judgment against appellant. We affirm.

Peggy Ann Jones, the surviving wife of Joe Cobb Jones, deceased, individually and as legal guardian of the surviving minor children, brought this action against the State Board of Trustees of the Employees Retirement System of Texas, and its chairman and secretary, in the form of an appeal from an administrative order of the Board, which had denied plaintiff's application for death benefits pursuant to Article 6228f. In her petition for trial de novo she alleged that the administrative decision of the State Board was unreasonable, arbitrary and contrary to law, and that by virtue of the death of her husband which occurred while he was a member of the Dallas Police Reserves she, and her children, were entitled to recover the statutory amounts set forth and provided in Article 6228f. The named defendants represented by the Attorney General of Texas, answer-

ed with the contention that Joe Cobb Jones, deceased, was not a member of an organized police reserve unit with the power to make arrest as required by Article 6228f and therefore no recovery under the statute could be lawfully granted. Both parties moved for summary judgment.

In addition to affidavits supporting the motions the parties entered into the following stipulation of facts: Joe Cobb Jones died in Dallas on July 28, 1972, while discharging duties as a member of a group known as the Dallas Police Reserves. At the time of his death he was survived by his wife, Peggy Ann Jones, and two minor children, Tina Marie Jones and Michael Lee Jones. The group known as the Dallas Police Reserves has been functioning as a unit with the Dallas Police Department since February 16, 1953. The City Council of the City of Dallas, being the governing body of that city, has never adopted an ordinance or resolution of any nature establishing or appointing the Dallas Police Reserves. Prior to his death Joe Cobb Jones was qualified to be a peace officer and recognized as such by the Texas Commission on Law Enforcement Officers' Standards and Education, pursuant to Tex.Rev.Civ. Stat.Ann. art. 4413(29aa), § 2(c) (Supp. 1973). Arrests have been made by members of the group known as the Dallas Police Reserves, both before and after the date of Joe Cobb Jones' death, in misdemeanor and other cases. Claim for benefits under Article 6228f was timely filed by Peggy Ann Jones on behalf of herself and her two minor children and such claim was denied.

In the affidavit executed by Frank Dyson, Chief of Police of the Dallas Police Department, in support of appellant's motion for summary judgment, he stated that Joe Cobb Jones was appointed by him to be a member of the Dallas Police Reserves on October 22, 1971, and continued as a member of such organization in good standing until the date of death, July 28, 1972. In another affidavit, T. T. Lord, a lieutenant of the Dallas Police Department, stated that the organization known as the Dallas

Police Reserves was created and established on February 16, 1953, by order of the Chief of Police and has been functioning as a reserve police force for the Dallas Police Department since that date.

In her first and only point of error appellant contends that the trial court erred in granting the motion for summary judgment of appellees, and in failing to grant appellant's motion for summary judgment, inasmuch as the court misinterpreted the statutes involved and disregarded legislative intent. Under this point appellant takes the position that the office of "police reserve" was created by the State Legislature and therefore a legal office does exist under which Joe Cobb Jones, deceased, could legally be operating as a de facto officer at the time of his death. In opposition to this contention, appellees contend that under the constitutional and statutory provisions not all police reserve units are eligible to qualify for death benefits. Appellees argue that the office of Dallas Police Reserves did not come into being since the City Council of the City of Dallas never enacted an ordinance creating such reserve unit and therefore Joe Cobb Jones was neither a de facto nor de jure officer at the time he met his untimely death.

Proper resolution of the question thus clearly presented requires careful study of the constitutional and statutory provisions involved. As initially adopted Article 3 § 51 of the Constitution of Texas Vernon's Ann.St. broadly prohibited the legislature from making any grant or authorizing the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations, with minor exceptions.

Thereafter Article 3 § 51–d of the Constitution was adopted which created an exception to the general rule contained in Article 3 § 51. By this exception the legislature was given the power, by general law, to provide for the payment of assistance by the State of Texas to the surviving spouses and minor children of officers,

employees, and agents, including members of organized volunteer fire departments and members of organized police reserve or auxiliary units with authority to make an arrest, of the state or of any city, county, district or other political subdivision, who, because of the hazardous nature of their duties, suffer death in the course of the performance of those official duties.

To implement the constitutional provisions of Article 3 § 51–d, the legislature enacted Article 6228f in which it was declared to be the public policy of this state, under its police power, to provide financial assistance to the surviving spouses and minor children of various law enforcement officers, including organized police reserve unit officers, who suffer violent death in the course of the performance of their duties. The statute provides for specific amounts to be paid.

Also enacted by the legislature was Tex. Rev.Civ.Stat.Ann. art. 998a (Supp.1973) which must be considered as being in pari materia with Article 6228f. We quote the material portions of Article 998a:

(a) The governing body of any city, town, or village may provide for the establishment of a police reserve force. Members of the police reserve force, if authorized, shall be appointed at the discretion of the chief of police and shall serve as peace officers during the actual discharge of official duties.

(b) The governing body shall establish qualifications and standards of training for members of the police reserve force, and may limit the size of the police reserve force.

(c) No person appointed to the police reserve force may carry a weapon or otherwise act as a peace officer until he has been approved by the governing body. After approval, he may carry a weapon only when authorized by the Chief of Police, and when discharging official duties as a duly constituted peace officer.

The legislature also enacted Article 4413(29aa) which establishes a Commission on Law Enforcement Officer Standards and Education. This act provides that the commission shall establish minimum training standards for all reserve law enforcement officers which must be met before a person appointed as a reserve law enforcement officer may carry a weapon or otherwise act as a peace officer.

■ While conceding that the City of Dallas, acting through its governing body, has never enacted an ordinance officially creating the Dallas Police Reserves pursuant to authority of Article 998a, appellant contends that such an ordinance was not essential to the creation of the reserve unit because the legislature intended to create the office of police reserve by enacting the statutes above referred to. Appellant also argues that the intent of the legislature in enacting a particular statute is not necessarily gained from the words used by the legislature. She argues that such intent should be gathered from a practical and reasonable interpretation rather than a literal interpretation of the words utilized by the lawmakers. We cannot agree with appellant that such an interpretation is permissible. The language used by the legislature in the statutes implementing the constitutional amendment is clear and explicit. Article 6228f broadly announces the public policy of the state, as reflected in the constitutional amendment, that financial assistance shall be provided to the surviving spouses and minor children of members of organized police reserve units who are killed while performing their duties as members of said unit. Article 998a specifically directs how an organized police reserve unit may be created. It is therein provided that "the governing body of any city, town or village may provide for the establishment of a police reserve force." The intent is clearly conveyed that a legally constituted police reserve unit must be given life by the governing body of the municipality. Such action is not made mandatory but discretionary with the gov-

erning body of the particular city involved. By the terms of this statute there can be no doubt that an organized police reserve unit with authority to make arrest in the City of Dallas can only be legally established by ordinance or other action of the City Council in compliance with the existing charter.

■ Appellant, while recognizing that the City of Dallas has never complied with the statutory provisions to legally create a police reserve unit, argues that the governing body of the City of Dallas may approve reserve officers "orally" or "impliedly by non-action." Again we cannot agree with appellant. The powers once delegated by city charter to the City Council to be exercised by ordinance may not be exercised otherwise, as by delegation to the Chief of Police. City of San Antonio v. Coultress, 169 S.W. 917 (Tex.Civ.App.—San Antonio 1914, writ dism'd); 39 Tex.Jur.2d 646 § 314–316 (1962). Therefore, in absence of action by City Council, the Dallas Police Reserve unit has not been established as a de jure "organized police reserve or auxiliary unit with the authority to make arrest," such that its members are eligible for death benefits under Article 6228f.

Appellant earnestly contends that the office was created legislatively, and therefore Joe Cobb Jones was a de facto member thereof at the time of his death which would entitle his survivors to recover the benefits enumerated in Article 6228f. In support of this de facto status appellant relies upon City of San Antonio v. Wiley, 252 S.W.2d 471 (Tex.Civ.App.—San Antonio 1952, writ ref'd n. r. e.); Whatley v. State, 110 Tex.Cr.R. 337, 8 S.W.2d 174 (1928); City of Fort Worth v. Morrison, 164 S.W.2d 771 (Tex.Civ.App.—Fort Worth 1942, writ ref'd); Anderson v. State, 149 Tex.Cr.R. 423, 195 S.W.2d 368 (1946); and Uhr v. Brown, 191 S.W. 379 (Tex.Civ.App.—San Antonio 1916, no writ). We have examined these cases and find that they are clearly distinguishable from the factual situation here presented.

None of them involved the question of whether an office can exist if the governing body fails to exercise its discretionary authority to create such office.

Without a statute or charter granting to the governing body of the city authority to create an office, there can be no de jure office and no de facto holder thereof unless the governing body exercise such authority.

The Supreme Court of Texas in City of Dallas v. McDonald, 130 Tex. 299, 103 S.W.2d 725 (1937) had before it a suit to compel reinstatement of six Dallas policemen and to recover salary as a result of allegedly unlawful termination of their employment. The court pointed out that no effort was made to prove any ordinance by the City Council of the City of Dallas creating any offices of policemen within the police department or prescribing the number of police officers or patrolmen. The plaintiffs in that case relied upon the assumption that the city manager could by appointment bring into existence as many offices as he might from time to time determine were proper and necessary. Plaintiffs relied upon an instrument designated "warrant of appointment" as a source of authority and as constituting evidence of the legal existence of the office sought to be recovered. In denying the mandamus action the Supreme Court said:

We think it affirmatively appears, therefore, that plaintiffs failed to show that the respective offices claimed by them were ever legally brought into existence, and therefore no mandamus could issue requiring their reinstatement to such positions. Courts will not undertake to do the anomalous thing of requiring reinstatement into an office which does not legally exist. There being no office de jure, plaintiffs were not officers de facto in the sense that they could recover emoluments for unexpired terms. There could be no unexpired terms of offices having no legal existence.

In City of San Antonio v. Coultress, 169 S.W. 917, (Tex.Civ.App.—San Antonio 1914, writ dism'd) the court said:

> The powers of the city council granted it by the state in its charter cannot be delegated to the mayor or to the police committee, but can only be exercised as therein pointed out, viz., by ordinance. And this has not been done. It is no answer to say that occasions frequently arise when the force should be either larger or smaller, because the council could provide for such emergencies.
>
> .     .     .     .     .     .
>
> To the argument that the department of police has been so maintained for many years, we answer: That does not make it any more legal. It may be that the reason the department was required to be established by ordinance was because the people could then know how many policemen they would have, and not leave such an important branch of the city government and the number thereof to the good judgment or caprice, as the case might be, of those in authority at any particular time.

In McGuire v. City of Dallas, 151 S.W. 2d 617 (Tex.Civ.App.—Waco, 1941, writ dism'd jdgmt cor.), a mandamus was sought to compel the City of Dallas to reinstate McGuire in his position as city fireman. The court pointed out that McGuire did not plead the enactment by the City Council of any ordinance or resolution required by the charter of the City of Dallas. The court concluded that before McGuire or any member of the fire department could have been legally employed by the City of Dallas it would have been necessary that the legislative body of the city take affirmative action by the enactment of a proper ordinance.

■ The question of de facto and de jure status of an officer was carefully considered by the Supreme Court of the United States in Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886), cited with approval in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In that case the court pointed out that the doctrine which gives validity to acts of officers de facto, whatever defect there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interest may be affected thereby. The court went on to point out that the idea of an officer implies the existence of an office which he holds:

> It would be a misapplication of terms to call one an 'officer' who holds no office, and a public office can exist only by force of law.  .   .   .
>
> .   .   .   .   .   .   .
>
> None of the cases cited militates against the doctrine that, for the existence of a de facto officer, there must be an office de jure, although there may be loose expressions in some of the opinions, not called for by the facts, seemingly against this view. Where no office legally exists, the pretended officer is merely a usurper, to whose acts no validity can be attached;  .   .   .   .

In view of the constitution and statutes, and authorities dealing therewith, we conclude that while it may be true that groups such as the Dallas Police Reserve have functioned as such for many years, they do not constitute "organized police reserve or auxiliary units with authority to make arrest," as provided by law, nor are their members entitled to death benefits under the applicable statutes until they have been established and designated as such by the governing body of the City of Dallas as authorized by Article 998a.

Appellant's point of error is overruled and the judgment of the trial court is affirmed.